**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:18-cr-97-4 |
| v. | ) | |
| | ) | Judge Travis R. McDonough |
| DANYALE COOPER | ) | |
| | ) | Magistrate Judge Susan K. Lee |

---

**MEMORANDUM OPINION**

---

Before the Court is Defendant's Motion for Sentence Reduction Under Guideline Amendment 821, Part A. (Doc. 295.) The United States ("the Government") responded in opposition to Defendant's motion (Doc. 285), and Defendant replied (Doc. 286). For the reasons stated below, Defendant's Motion for Sentence Reduction (Doc. 295) is **DENIED**.

## I. BACKGROUND

On July 24, 2018, an Indictment charged Defendant with conspiring to distribute and possess with intent to distribute fifty grams or more of methamphetamine (actual) and five hundred grams or more of a mixture and substance containing methamphetamine. (Doc. 3.) On December 12, 2018, Defendant pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute five grams or more of methamphetamine (actual) and fifty grams or more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. (Doc. 74.)

Defendant stored methamphetamine at her home and sold "a couple of ounces" each week. (Doc. 74, at 3.) Twice during October and November 2017, "co-defendant sent another conspirator to [Defendant's] house to pick up ten ounces . . . each of methamphetamine, for a total of approximately [twenty] ounces." (*Id*. at 2.) When law enforcement searched the home

Defendant shared with co-defendant, they found eighty ounces of methamphetamine, three pounds of marijuana, and two firearms. (Doc. 74, at 3; Doc. 146, at ¶¶ 26, 47.) A co-conspirator reported he made about $400 per ounce of methamphetamine, and $3,500 per pound of marijuana. (Doc. 146, at ¶ 30.)

The Presentence Investigation Report ("PSR") indicated Defendant had no prior criminal history. (*Id.*) The PSR determined Defendant's base offense level was 34 and recommended a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) because "pursuant to a search warrant, agents located a Walther PK390 in a dresser drawer in a bedroom and an IJ Target Sealed .22 caliber revolver in the residence that belonged to [Defendant] and co-defendant." (*Id*. at ¶¶ 46–47.) The PSR also recommended a three-level reduction for acceptance of responsibility for a total offense level of 33. (*Id*. at ¶¶ 53–55.) Defendant had zero criminal history points, for a criminal history category of I. (*Id*. at ¶¶ 60–61.) The resulting guideline range was 135–168 months of imprisonment. (*Id*. at ¶ 81.)

Defendant filed objections to the PSR. (Doc. 125.) Relevant here is Defendant's objection to paragraph 47, the two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm during the commission of a drug offense. (*Id*. at 1.) Defendant argued:

> there is no proof or evidence that [Defendant] was in any way aware that there was a Walther PK390 pistol located in a dresser drawer in the bedroom. There is no evidence that any clothing or other items identifying [Defendant] were found with the pistol. Further, it appears there was some sort of a .22 caliber revolver in a hole, above one of the doors of the home. There is no evidence [Defendant] had any link to that weapon, or in fact to either of the two weapons or any knowledge of the same. Nothing in any of [Defendant's] statements indicate she had any knowledge or any connection with the weapons. There are no fingerprints or DNA evidence linking [Defendant] to the weapons.

(*Id*. at 1–2.) Defendant further argued she is "terrified of firearms," based on a tragic event in which her father shot her mother while her mother was eight months pregnant

with Defendant, paralyzing her mother from the neck down for twenty-one years. (*Id*. at 2.)

The PSR was not changed in response to Defendant's objection to PSR paragraph 47. (Doc. 145, at 2.) At sentencing, Defendant's counsel stated Defendant had no objections to the PSR, as she had "either resolved them or withdrawn them." (Doc. 259, at 6.) The Court made a "finding that the presentence report correctly states the facts in the report" with respect to Defendant. (*Id*. at 8.)

During sentencing, Government counsel stated "[t]here were also guns involved in [Defendant's] case. I understand that she may not have been the one that personally was using them or employing them actively herself, but she was involved with someone and living with someone who was." (*Id*. at 20–21.)

The Court adopted the PSR guideline calculations, then granted a downward departure by three levels based on the Government's motion. (Doc. 224; Doc. 259, at 10–11, 17.) Defendant was not granted safety valve. (Doc. 259.) Because Defendant had served ten months in state custody on related charges, the Court granted a ten-month downward adjustment under U.S.S.G. § 5G1.3(b), ultimately sentencing her to 87 months in prison. (*Id.* at 27–28.) Defendant's projected release date is December 27, 2024. *See* Inmate Locator, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmateloc/.

To Defendant's credit, while incarcerated, she has not incurred any disciplinary infractions. (Doc. 295, at 12, 15.) The Government asserts Defendant has also completed 56 hours of educational or vocational programming while in custody. (Doc. 285, at 7–8.)

Effective November 1, 2023, Amendment 821 reduced status points from two to one if the defendant received 7 or more points under U.S.S.G. § 4A1.1(a)–(d) and eliminated them

otherwise. *See* U.S.S.G. §§ 4A1.1(e), 4C1.1. It also created a new guideline, U.S.S.G. § 4C1.1, which instructs courts to apply a two-level downward adjustment to the offense level of a defendant who received zero status points and meets a list of enumerated criteria. This amendment applies retroactively. U.S.S.G. § 1B1.10(d). The present motion followed.

## II. LEGAL STANDARD

### A. Modification of Sentence

A district court has "no inherent authority … to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). "A district court may modify a defendant's sentence only as provided by statute." *United States v. Johnson*, 564 F.3d 419, 421 (6th Cir. 2009). However, 18 U.S.C. § 3582(c)(2) provides: "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

The Supreme Court has explained that § 3582(c)(2) requires a "two-step inquiry." *Dillon v. United States*, 560 U.S. 817, 826 (2010). At step one, the Court must "determine that a reduction is consistent with [U.S.S.G.] § 1B1.10." *Id.* A reduction is inconsistent with § 1B1.10 if none of the amendments made retroactive in the policy statement apply to the defendant or would "have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2). In determining what reduction, if any, is appropriate, the Court "determine[s] the amended guideline range that would have been applicable to the defendant if the amendment(s) . . . had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1). The

Court must "leave all other guideline application decisions unaffected." *Id.* With limited exceptions, "the court shall not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range . . . ." U.S.S.G. § 1B1.10(b)(2)(A). Nor may the "reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(C).

At step two, the Court considers the applicable § 3553(a) factors to determine whether the authorized reduction is appropriate "in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827. "[T]he decision whether and to what extent to grant an authorized sentence reduction is discretionary." *United States v. Monday*, 390 F. App'x 550, 554 (6th Cir. 2010) (citing *United States v. Johnson*, 564 F.3d 419, 421 (6th Cir. 2009)). But "proceedings under 18 U.S.C. § 3582(c)(2) and [U.S.S.G. § 1B1.10] do not constitute a full resentencing of the defendant." U.S.S.G. § 1B1.10(a)(3).

When considering a motion for modification, "[t]he modification court's examination of the record will include the trial transcript, the sentencing hearing transcript, and the portions of the presentence report that the defendant admitted to or the sentencing court adopted." *United States v. Valentine*, 694 F.3d 665, 670 (6th Cir. 2012) (citing *United States v. Blackmon*, 380 F. App'x 498, 501 (6th Cir. 2010)).

**B. Amendment 821**

Part B of Amendment 821 created a new guideline, U.S.S.G. § 4C1.1, which instructs courts to apply a two-level downward adjustment to the offense level of a defendant who meets a list of enumerated criteria. One such criteria is "the defendant did not possess . . . a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." § 4C1.1(a)(7). The Sentencing Commission designated adjustments under § 4C1.1 as

retroactively applicable. U.S.S.G. § 1B1.10(d).

The § 4C1.1(a)(7) firearm-possession disqualification is based on the safety-valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. *See* U.S.S.G. App. C, amend. 821 (Nov. 1, 2023) (Reason for Amendment) ("The Commission was also informed by existing legislation, including the congressionally established criteria for the statutory safety valve at 18 U.S.C. § 3553(f) and the recent firearms legislation set forth in the Bipartisan Safer Communities Act."). As with the safety-valve provisions, "[t]he defendant bears the burden of proving by a preponderance of the evidence that she meets each and every criterion." *See United States v. Reinberg*, 62 F.4th 266, 268 (6th Cir. 2023) (quotation and citation omitted).

Application of a two-level sentence increase under U.S.S.G. § 2D1.1(b)(1) does not automatically disqualify a defendant from satisfying the requirement of § 4C1.1(a)(7). *See United States v. Bolka,* 355 F.3d 909, 914 (6th Cir. 2004). Section 2D1.1(b)(1) provides for a two-level increase in the base offense level "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of the crime. U.S.S.G. § 2D1.1(b)(1). Unlike § 4C1.1(a)(7), which limits accountability to the defendant's own actions, § 2D1.1(b)(1) may apply even if the firearm was possessed by someone else, including a co-conspirator, if such possession constituted reasonably foreseeable conduct. *See United States v. Barron*, 940 F.3d 903, 911–12, 915 (6th Cir. 2019).

Additionally, the § 2D1.1(b)(1) "enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G § 2D1.1(b)(1), comment. n.11(A). By contrast, § 4C1.1(a)(7) requires proof by a preponderance of the evidence of "active possession whereby there is a close connection linking the individual defendant, the weapon and the offense." *United States v. Zavalza-Rodriguez*, 379

F.3d 1182, 1187 (10th Cir. 2004) (citation omitted) (comparing U.S.S.G. § 2D1.1(b)(1) with § 5C1.2(2) safety-valve provision); *Reinberg*, 62 F.4th at 268.

## III. ANALYSIS

Here, the parties disagree about whether Defendant possessed a firearm in connection with the offense under U.S.S.G. § 4C1.1(a)(7). (Docs. 285 at 3–7; 295, at 2–4, 7–10.) Defendant asserts there is no evidence to suggest the firearms found at her home belonged to her or that she knew they existed. (Doc. 295, at 2.) Defendant moves for a sentence of time served. (*Id*. at 1.) The Government argues Defendant "actually or constructively possessed" the firearms and "has not satisfied her burden to show that she did *not* possess a firearm in connection with the offense, as required by [U.S.S.G.] § 4C1.1(a)(7)." (Doc. 285, at 6.)

At sentencing, Defendant abandoned her earlier written objections (Doc. 125) and stated she had no objections to the PSR. (Doc. 259, at 6.) The Court accordingly found "the presentence report correctly states the facts in the report" with respect to Defendant, which included a statement that "agents located a Walther PK390 in a dresser drawer in a bedroom and an IJ Target Sealed .22 caliber revolver in the residence that belonged to [Defendant] and co-defendant." (Docs. 259 at 8; 146 at ¶¶ 46–47); *see* Fed. R. Crim. P. 32(i)(3)(A). No new evidence is now before the Court to rebut its earlier finding. Government counsel's statement that Defendant "may not have been the one that personally was using [the firearms] or employing them actively herself" is ambiguous and not determinative in the Court's analysis as the Court found that Defendant possessed two firearms. (Doc. 259, at 20–21); *see, e.g.*, *Valentine*, 694 F.3d at 670.

In addition to the Court's finding regarding the facts stated in the PSR, the evidence supports the conclusion that Defendant possessed the firearms. "Constructive possession of an

item is the ownership, or dominion or control over the item itself, or *dominion over the premises where the item is located*." *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (quotations and citation omitted). Access to or control over the premises is inconsequential because "the law recognizes joint possession." *Id*. (citations omitted). In *Wheaton*, the Sixth Circuit held that a defendant constructively possessed a firearm found under the couch in a home he shared with several people. *Id*. Here too, Defendant shared a home with co-defendant for over a year and had dominion over the home where the firearms were located. (Doc. 146, at ¶¶ 26, 47.) The Court maintains its earlier finding that the two firearms belonged to Defendant.

The Court now turns to whether Defendant possessed the firearms "in connection with the offense." Although U.S.S.G. § 4C1.1(a)(7), unlike § 2D1.1(b)(1), imposes no clear-improbability standard, the factors courts have identified in that context aid the determination whether a firearm is possessed "in connection with" a drug-trafficking offense. Factors relevant to determining whether a defendant's firearm possession was connected to her drug trafficking activity include: the proximity of the firearm to the drugs, the type of firearm involved, whether the firearm was loaded, and any alternative purpose offered to explain the presence of the firearm. *See United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002). With regard to the first factor, in *Wheaton* the Court of Appeals found that "[t]he drugs and the gun do not have to be in the same location" in order for the gun to be attributable to [the defendant], because the residence itself was associated with the drug conspiracy. *Wheaton*, 517 F.3d at 367 (citing *United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002).

Here, the firearms were found in the home where Defendant and co-defendant were storing and selling methamphetamine and marijuana, which weighs heavily against Defendant. (Docs. 74 at 3, 146 at 47.) The firearms are also handguns of a type typically used in drug

trafficking, which also weighs heavily against Defendant. *See Moses*, 289 F.3d at 851 (noting that the defendant did "not contend that a .22 caliber pistol is an uncommon weapon among those who commit drug offenses. Nor could he plausibly do so, because federal appellate courts have consistently upheld [U.S.S.G.] § 2D1.1(b)(1) enhancements based upon the defendant's possession of a .22 caliber pistol"). There is no evidence before the Court regarding whether the firearms were loaded, nor is there an alternative purpose offered to explain the presence of the firearms. Even if the Court resolves these final two factors in favor of Defendant, the evidence weighs heavily toward finding Defendant possessed the firearms in connection with the offense.

The Court finds Defendant possessed the firearms in connection with the offense, does not satisfy all criteria under U.S.S.G. § 4C1.1, and is ineligible for sentence reduction under Amendment 821.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Sentence Reduction (Doc. 295) is **DENIED**.

**SO ORDERED.**

***/s/ Travis R. McDonough***
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**